324 S.E.2d 161

**M.S. JAWA, Ph.D**

v.

**BOARD OF EDUCATION OF McDOWELL COUNTY, et al.**

**No. 16215.**

Supreme Court of Appeals of West Virginia.

Dec. 19, 1984.

M.S. Jawa, Ph.D. pro se.

Sidney H. Bell, Pros. Atty., McDowell County, Welch, for appellees.

PER CURIAM:

M.S. Jawa, a county school psychologist appealing *pro se*, seeks to reverse a final judgment of the Circuit Court of McDowell County denying his petition for a writ of mandamus to compel the McDowell County Board of Education to perform certain actions relating to the terms of his employment.

Jawa, an Asian-Indian American with a doctorate, was employed as a school psy-chologist beginning in the 1979–80 school year by the McDowell County Board of Education. His job description included a provision stating that he would be "functionally responsible to the Coordinator of Special Education, with reporting responsibility to the Director of Pupil Personnel Services, and final responsibility to the Superintendent of Schools." In January, 1982, another county school psychologist, John Wren, entered into an "agreement" with the then county superintendent of schools further specifying the duties and responsibilities of school psychologists vis-a-vis the other members of the special education staff. This agreement gave more autonomy to school psychologists to determine their own work schedules.

The county board in June, 1982 unanimously decided not to offer Jawa a contract of employment for the 1982–83 school year. Jawa appealed to the State Superintendent of Schools, contending primarily that he had never been given an "open and honest" evaluation of his job performance as required by West Virginia Board of Education Policy No. 5300 and *Trimboli v. Board of Education of Wayne County*, 163 W.Va. 1, 254 S.E.2d 561 (1979). The State Superintendent found merit in Jawa's contention, reversed the county board's nonrenewal decision, and ordered reinstatement with back pay. The state superintendent noted in his decision that the county board did not have a recognizable system for the management of its school psychology program, making it impossible to ascertain whose job it was to supervise Jawa.

After the state superintendent's decision, the county board offered and Jawa signed an employment contract granting him continuing contract status, in effect, tenure. W.Va.Code, 18A–2–6. However, in accepting the contract, Jawa wrote on the face of the contract that his acceptance was subject to the January, 1982 agreement negotiated by John Wren.

These circumstances obviously created a serious managerial problem in the administration of the county's school psychology program. Consequently, a short

time after Jawa's acceptance the new county superintendent, Robert Goosens, informed Jawa that he considered the 1982 agreement "null and void", and that he was instituting a new "management system" to clarify the proven inadequacies of the present system. Jawa's job description was modified to provide for direct administrative supervision by the assistant superintendent of pupil personnel services and the coordinator of special education programs. The new job description describes his duties, requires him to file periodic reports, and provides for twice-a-year evaluations. The provision calling for evaluations twice a year was designed to comport with our decision in Syllabus Point 3 of *Lipan v. Board of Education of Hancock County,* 170 W.Va. 553, 295 S.E.2d 44 (1982), where we held that the "[p]ersonnel evaluations, described in [West Virginia Board of Education] Policy No. 5300(6)(a), are required by the regulation itself to be "regular" and to be effective, must be more frequent than annual."

Finding these management changes unacceptable, Jawa filed a *pro se* petition for a writ of mandamus in the Circuit Court of McDowell County seeking to compel the respondents to: (1) reinstate the January, 1982 agreement; (2) nullify his new job description and the management system implemented by the county superintendent in October, 1982; (3) enforce the provisions of W.Va.Code, 18A–2–1 and 18A–3–1; (4) appoint him as a new supervisor of a "psychological service system" for the county; and (5) award him compensation for the time he spent preparing and presenting his petition for mandamus relief.

■ Jawa testified at the evidentiary hearing held on his mandamus petition.

He also presented testimony from one witness in an effort to prove he was being discriminated against because of his national origin or ancestry. The respondent board of education presented testimony from one witness, county superintendent Goosens. At the conclusion of the hearing, the circuit court in a well-reasoned order denied relief, relying on the well-settled law that:

"A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syllabus Point 1, *Smith v. W. Va. State Board of Education,* 170 W.Va. 593, 295 S.E.2d 680 (1982), *quoting* Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969).

We agree with the trial court that Jawa's strongest plea for relief is the contention that he was transferred or reassigned, after returning to work following the state superintendent's decision, without notice and hearing as required by W.Va.Code, 18A–2–7.[1] *Morgan v. Pizzino,* 163 W.Va. 454, 256 S.E.2d 592 (1979). The county board employs three school psychologists, each serving some eleven schools, who go to the schools to administer tests and evaluate students. Upon Jawa's return to employment, the schools served were redivided among the three with Jawa being required to do field work at eight different schools. It appears the redivision coincided with the county board's employment of a new school psychologist to replace one who left for reasons not disclosed in the record.

---

1. W.Va.Code, 18A–2–7 provides as pertinent here:

"The superintendent, subject only to approval of the board, shall have authority to assign, transfer, promote, demote or suspend school personnel and to recommend their dismissal pursuant to provisions of this chapter. However, an employee shall be notified in writing by the superintendent on or before the first Monday in April if he is being considered for transfer or to be transferred. Any teacher or employee who desires to protest such proposed transfer may request in writing a statement of the reasons for the proposed transfer. Such statement of reasons shall be delivered to the teacher or employee within ten days of the receipt of the request. Within ten days of the receipt of the statement of the reasons, the teacher or employee may make written demand upon the superintendent for a hearing on the proposed transfer before the county board of education. The hearing on the proposed transfer shall be held on or before the first Monday in May. At the hearing, the reasons for the proposed transfer must be shown."

Jawa's base of operations at an office located in the Wilco Educational Center was not changed, nor was any other change made in the terms of his employment. His grievance challenging the reallocation was denied.

Jawa was not reassigned or transferred within the meaning of W.Va.Code, 18A–2–7, such that he was entitled to prior notice and, upon request, a hearing to challenge the superintendent's decision. Jawa's base office is in the same location. No evidence was presented indicating that the redivision was effected to punish him for exercising his right to administratively challenge the county board's nonrenewal decision or that the redivision created more onerous working conditions. Nothing in Jawa's continuing contract affords him the right to perform his services at any particular school. County school superintendents have "a multitude of powers and duties", *see State ex rel. Rogers v. Board of Education of Lewis County*, 125 W.Va. 579, 25 S.E.2d 537 (1943), "including powers of independent judgment and discretion". *Hall v. Pizzino*, 164 W.Va. 331, 263 S.E.2d 886 (1980). The redivision was within the administrative discretionary authority of the county superintendent and school board; no arbitrary or capricious use of such power has been shown.

The trial court also correctly concluded that the county superintendent had the lawful authority to implement a new "management system". The agreement negotiated by Dr. Wren was merely an administrative pact designed to provide clear lines of authority in the interest of harmonious day-to-day working relationships. It was subject to modification and did not become a part of his continuing employment contract. This case is clearly distinguishable on its facts from our decision in *Board of Education of Fayette County v. Hunley*, 169 W.Va. 489, 288 S.E.2d 524 (1982), where the county board of education, without giving notice as required by W.Va.Code, 18A–2–6, cut the working hours of school service personnel who had attained continuing contract status by one-half.

We have considered Jawa's other arguments in support of reversal and find no merit in them. Employment discrimination claims are more appropriately filed with the federal Equal Employment Opportunity Commission and the West Virginia Human Rights Commission. *See State ex rel. Hawkins v. Tyler County Board of Education*, 166 W.Va. 363, 275 S.E.2d 908 (1980). In any event, no evidence establishing ethnic animus or disparate treatment was presented in the hearing below. No showing was made that his supervisors were employed in violation of state law or state board regulations. No prejudicial error having occurred in the proceedings below, we affirm.

For the foregoing reasons, the judgment of the Circuit Court of McDowell County is affirmed.

Affirmed.